UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CASE NO. 1:24-cv-151

JACK V. SMITH and KERSTIN A.
LANIER,
     Plaintiffs,

v.

JOHN LEITE & LISA CLARK TRUST
dated March 12th, 2021,
     Defendant.

**COMPLAINT**

***(Jury Demand)***

     **NOW COMES** the Plaintiffs, JACK V. SMITH and KERSTIN A. LANIER, by and through counsel of record, Patrick Twisdale and Austin von Henner, of King Law Offices, PC, alleging and saying to the Defendant as follows:

## PARTIES, CAPACITY, JURISDICTION, AND VENUE

1. Plaintiff Jack V. Smith (hereinafter "Plaintiff Smith") is a resident of Buncombe County, North Carolina.

2. Plaintiff Kerstin A. Lanier (hereinafter "Plaintiff Lanier") is a resident of Buncombe County, North Carolina (with Plaintiff Smith and Plaintiff Lanier, collectively referred to as "Plaintiffs").

3. Plaintiffs own real property by tenants in the entirety located in Buncombe County, with a parcel identification number of 9655-51-9369, and as record in the Buncombe County Register of Deeds in deed book 5103, page 0482 (hereinafter, the "Plaintiffs' Property").

4. Upon information and belief Defendant JOHN LEITE & LISA CLARK TRUST dated March 12th, 2021 (hereinafter "Defendant") is the owner of a parcel of land located in Buncombe County with a parcel identification number of 9655-51-5422 and as recorded in the Buncombe County Register of Deeds in deed book 6045, page 1398 (hereinafter, the "Defendant's Property"). See attached **Exhibit 1** (the deed for Defendant's Property).

5.  Upon information and belief, Defendant is a trust set up in the state of Tennessee with the current Trustees being John S. Leite and Lisa L. Clark of Cordova, Tennessee. See attached **Exhibit 2**, the Certification of Joint Revocable Community Property Trust.

6.  As this issue regards activities that happened in Buncombe County, North Carolina and regards two parcels of real property in Buncombe County, North Carolina.

7.  Pursuant to 28 U.S. Code § 1332, the United States District Court for the Western District of North Carolina, Asheville Division, has original jurisdiction over this matter as the alleged damages exceed $75,000.00 and the parties are citizens of different states, i.e., North Carolina for the Plaintiffs and Tennessee for the Defendant.

8.  The Court has jurisdiction over the parties and subject matter.


FACTUAL BASIS FOR CLAIMS

9.  Plaintiffs allege and incorporate by reference the allegations contained in the above paragraphs of its Complaint as if fully set forth herein.

10. Plaintiffs own the Plaintiffs' Property and an adjacent parcel which they use as their primary residence.

11. Plaintiffs bought the Plaintiffs' Property with the principal purpose being blocking their view of other houses in the neighborhood from their primary residence on the adjacent parcel also owned by Plaintiffs so that Plaintiffs could enjoy their primary residence on the adjacent parcel without nuisance and with minimal disturbance of their privacy and quiet enjoyment.

12. Geographically, the Plaintiffs' Property and their adjacent parcel are along the side of a steep slope, with the top of that slope being the Western border of the Plaintiffs' Property, which is adjacent to the Defendant's Property.

13. Prior to the Defendant's activities, the Plaintiffs, who are husband and wife, enjoyed their heavily wooded property that consisted of hundreds of trees, which the Plaintiffs made use of in its natural state. The trees on the property housed wildlife and also provided protection for the Plaintiffs, serving as a natural barrier and blocking the view of other houses and ensuring that Plaintiffs could enjoy their primary residence on the adjacent parcel without nuisance and with minimal disturbance of their privacy and quiet enjoyment.

14. In the Summer of 2023, Plaintiffs first became aware that construction of a house was taking place on Defendant's Property. Plaintiffs at this time had no notice or other reason to believe that any encroachment onto Plaintiffs' Property had or would take place. As noted above, the trees on Plaintiffs' Property blocked the view of Defendant's Property from Plaintiffs' primary residence, and said trees were in full form, *i.e.*, they had all their leaves, during the Summer. As such, Plaintiffs had no regular view of Defendant's Property at this time.

15. On or around November 2023, the Plaintiffs began hearing noise from their Western boundary before noticing trees being cut on both Defendant's Property and Plaintiffs' Property. As noted above, Plaintiffs knew that a house was being built on the Defendant's Property, but it was not until Plaintiffs noticed from their porch that the house being built on Defendant's Property had become uncomfortably visible through the trees and Plaintiffs hiked their property that Plaintiffs realized that trees both on the Plaintiffs' Property and the Defendant's Property had been cut and that a large amount of trees and other cut plants had been thrown to rot on Plaintiffs' Property.

16. The Plaintiffs hired a surveyor to come out to review the property in 2023. Surveyor visited the site several times, completing the survey on February 22nd, 2024. See attached **Exhibit 3** which is the plat recorded that shows the edge of clearing and the Tree Fall Area.

17. Between the multiple times that the surveyor came out to review the property, it appeared that the Defendant and its agents had cut more trees and thrown more trees and waste onto the Plaintiffs' Property.

18. Upon information and belief, either the Defendant or its agents chopped trees on both the Defendant's Property and the Plaintiffs' Property and threw all the wood and plant waste onto the Plaintiffs' Property as shown in **Exhibit 3**'s "Tree Fall Area."

19. Upon information and belief, the Defendant or its agents chopped down all the trees in the Tree Fall Area and chopped down trees past the Tree Fall Area. Pictures of the Tree Fall Area are below:



Fig. 1 Tree Fall Area
Picture prior to Surveyor's February Visit



Fig. 2 Northern Area of Tree Fall Area
Picture Prior to Surveyor's February Visit

20. Although it is hard to tell in the pictures due to the immense slope of the Plaintiffs' Property, the Tree Fall Area is extraordinarily deep. Some areas of the Tree Fall Area are at least five to six feet deep, or in other words, the length from the ground to the top of the Timber and other waste is as high as six feet tall, such as areas depicted in Fig. 1 above.

21. Some of the chopped trees were originally further away from the Defendant's Property line with one such tree pictured with the surveyor below:



Fig. 3 Chopped Tree within Plaintiffs' Property
Surveyor Pictured

22. The Defendant and its agents even left a chainsaw blade remaining in a tree on Plaintiffs' Property that was further away from the border between the Defendant's Property and Plaintiffs' Property than the Tree Fall Area, as pictured below:


Fig. 4 Chainsaw Blade Left in Tree on Plaintiffs' Property

23. An Arborist reviewed the damage and determined that at least thirty trees that could provide timber had been cut. The Arborist, however, could not determine the complete extent of the damage as many of the trees were either buried or submerged within the Tree Fall Area.

24. Among the trees that were cut were the following varieties: Black Cherry, Tulip Poplar, Chestnut Oak, White Oak, Hickory, Maple, and Pine.

25. In addition, some trees that were not cut down completely were still damaged by Defendant and its agents by "topping," a highly destructive practice in which trees are cut from the top down in order to quickly and cheaply reduce their height, resulting in long-term damage to the health and future growth of the trees.

26. Plaintiffs hired John Culp, Registered Forester, to review and assess the damage, but in his report, Mr. Culp stated, "[i]t was not possible to observe and measure stumps under the debris pile, which covered much of the 'Tree Fall Area.' Because of this it was not possible to estimate the volume of damaged timber based on the analysis of stumps." Due to this, Mr. Culp had to run estimates on the market value of the timber running roughly $1,637.79. As the debris sits now, however, it is impeding future growth and preventing the establishment of the forest. See attached **Exhibit 4** (John Culp's Assessment).

27. In addition to the above-described damage, as of the day of the Surveyor's February Visit, February 21st, 2024, the Tree Fall Area was littered with multiple beer bottles that appeared new and not weathered. Upon information and belief, the litter was a result of Defendant's and its agents' actions, and Plaintiffs believe that the Defendant and its agents were drinking while performing the cutting and removing of timber on both the Defendant's Property and the Plaintiffs' Property.

28. Due to Defendant's and its agents' actions and the location of the thrown trees and waste, Plaintiffs received a quote for cleaning up the damaged land for a minimum of $45,000 in order to clean the mess up, with a substantial portion of the fee being access as the contractors would need to build a road in order to remove the trees and waste. See attached **Exhibit 5** (Estimate by Shields Tree & Grading).

29. Due to the geography and the type of equipment required, the Contractor who would need to be hired to remove the Tree Fall Area and to clean that area would need to make a road as the existing access from the Defendant's Property would be insufficient to allow their equipment to access the Tree Fall Area.

30. Because the Tree Fall Area is so deep, a review of the soil cannot be reasonably made. A common industry practice for lot clearing that is illegal in some jurisdictions involves the digging of holes to place trees and debris in. Judging whether this practice has occurred in this case, however, would require removing the current Tree Fall Area, meaning there could be more damage to the Plaintiffs' Property than originally determined as placing the land back in its original condition would be necessary to prevent erosion issues along the rest of the Plaintiffs' Property. Overall, there could be tons of debris below ground and under the debris above ground that could result in structural and erosion concerns to the land that would have to be resolved in order to place the land back in its original condition.

31. Upon information and belief, pursuant to Article V, section 26-211 of the Buncombe County Planning Board Ordinance, an erosion control plan is required to "initiate any land distributing activity" for "[a]ny residential land distributing activity which uncovers one-quarter acre or more… on a lot, parcel, or tract with an average slope of 25% or greater in its natural state…." Upon information and belief, the Plaintiffs' Property and the Defendant's Property fall within the scope of Article V, section 26-211 and require an erosion control plan for their activities. Upon information and belief, Defendant and its agents did not receive an erosion control plan for their activities on the Plaintiffs' Property.

32. Removal of the Defendant's and Plaintiffs' trees has created a mountain view for the Defendant's new house and has greatly reduced the value of both Plaintiffs' Property and the adjacent parcel which they use as their primary residence as the seclusion and privacy aspects have been greatly diminished. The Defendant has benefited from the Plaintiffs' reduction in their properties' value as the mountain view created from the decreased number of trees has created a higher property value for the Defendant's Property. The Defendant's gain in value for the new house is estimated to be between 12% and 100% of the current property value now with a mountain view that was not present prior to the destruction of Plaintiffs' property and privacy.

33. The Defendant and its agents have continuously performed activities that have damaged the Plaintiffs' Property, and it is the belief of the Plaintiffs that the Defendant and its agents will continue to damage the Plaintiffs' property to increase the view of the house on the Defendant's Property and, thus, the value of Defendant's Property. In addition, Plaintiffs should not be held responsible for any violation of any state, local, or federal laws, rules, guidelines, and/or ordinances and any subsequent fees, penalties, or other such consequences as a result of the Defendant's activities on Plaintiffs' Property. Specifically, Plaintiffs are concerned that Defendant has failed to obtain and/or abide by a Land Disturbing Permit, particularly for activities that have taken place on Plaintiffs' property and for which Plaintiffs may be held responsible in terms of maintenance, such as supplying silt fencing and erosion control formerly provided by the trees, by Buncombe County.

**FIRST CAUSE OF ACTION:  TRESPASS TO TIMBER, PURSUANT TO N.C. GEN. STAT. § 1-539.1**

34. The above paragraphs are incorporated herein by reference as if fully set forth below.

35. Plaintiffs are the bona fide owners of Plaintiffs' Property, not the Defendant.

36. That the Defendant and its agents did not have permission or consent of the Plaintiffs to cut or remove timber from the Plaintiffs' Property.

37. That the Defendant and its agents cut and removed the timber from the Plaintiffs' Property.

38. That the Plaintiffs have been damaged by the actions of Defendant and its agents cutting and removing timber from Plaintiffs' Property to the amount of at least $1,637.79.

39. That pursuant to N.C. Gen. Stat. § 1-539.1, the Plaintiffs are entitled to treble damages.

40. That the Plaintiffs are owed at least $4,913.37 for their timber pursuant to N.C. Gen. Stat. § 1-539.1.

## SECOND CAUSE OF ACTION: TRESPASS TO REAL PROEPRTY

41. The above paragraphs are incorporated herein by reference as if fully set forth below.

42. Plaintiffs were and still are in possession and own the Plaintiffs' Property upon which Defendant and its agents trespassed when they came onto the land and cut and removed the Plaintiffs' trees and timber, while also throwing the waste from the Defendant's property onto the Plaintiffs' Property.

43. Defendant and its agents did not have the consent of the Plaintiffs nor permission to enter or place timber onto the Plaintiffs' property.

44. Without the Plaintiffs' permission or consent, the Defendant and its agents have caused property damages where restorative efforts to clear would require at least $45,000.00. This estimate does not include the loss of timber and possible erosion and soil conversation issues that would result from the creation of a road able to access the Tree Fall Area.

45. Without the Plaintiffs' permission or consent, the Defendant and its agents have removed timber and to replace the removed timber, it would cost at least $3,000.00 to replant trees.

46. Without the Plaintiffs' permission or consent, the Defendant and its agents have caused damage to the Plaintiffs' Property by creating erosion and soil conservation issues, the extent of the damage of which is unknown as the nature of the five-plus foot deep Tree Fall Area makes an analysis near impossible without a removal of the Tree Fall Area.

47. Without the Plaintiffs' permission or consent, the Defendant and its agents have allowed for the growth of invasive species, such as Oriental Bittersweet, whose growth requires a minimum of $1,500.00 per year to prevent until the replanted trees are able to regrow. It is estimated that fifteen (15) years would be required for the replanted trees to grow beyond the need for continuous and yearly removal of invasive species. The estimated cost would be at least $22,500.00.

48. That as a result of the Defendant's and its agents' actions, the Plaintiffs have liability pursuant to the local ordinances of Buncombe County which include monetary fines.

49. That as a result of the Defendant's and its agents' actions, the Plaintiffs have had to expend resources on third parties, not only to access the damages but also to begin repairing the Plaintiffs' Property.

50. That the Plaintiffs have been damaged at least $70,500.00.

## THIRD CAUSE OF ACTION: PRELIMINARY AND PERMANENT INJUNCTION

51. The above paragraphs are incorporated herein by reference as if fully set forth below.

52. There is no adequate remedy at law, equitable relief is feasible, and the Court is entitled to exercise its equitable powers in entering a preliminary and permanent injunction ordering the Defendant to refrain from continuing the destruction of the Plaintiffs' Property, including but not limited to the removal of Plaintiffs' trees and the throwing of waste including Defendant's trees and beer bottles onto the Plaintiffs' Property.

53. The Plaintiffs may suffer irreparable harm if the Defendant is not enjoined from continued actions on the Plaintiffs' Property.

## FOURTH CAUSE OF ACTION: PUNITIVE DAMAGES

54. The above paragraphs are incorporated herein by reference as if fully set forth below.

55. Defendant's and its agents' conduct constituted willful or wanton conduct as there was a conscious and intentional disregard of and indifference to the rights and safety of others, which the Defendant and its agents knew or should have known was reasonably likely to result in injury, damage, or other harm.

56. Upon information and belief, the Defendant and its agents knew where the property line was and willfully and wantonly acted to remove the timber from the Defendant's Property and the Plaintiffs' Property and place timber and other waste onto the Plaintiffs' Property. As shown in **Exhibit 3**, the clearing roughly lines up with the property boundary of the Defendant's Property and the Plaintiffs' Property, with the entirety of the "Tree Fall Area" lying in the

Plaintiffs' Property. Upon information and belief, the Defendant instructed its agents to perform these actions in a manner with willful and wanton disregard to the Plaintiffs' Property in an effort to increase the Defendant's property value by increasing the new house's view of the mountains.

57. Upon information and belief, the Defendant either participated in or condoned the conduct of its agents who cleared and threw the timber and waste onto the Plaintiffs' Property. Additionally, Defendant allowed the use of alcohol by the agents while they were operating dangerous machinery that caused damage to the Plaintiffs' Property.

58. Punitive damages should be awarded to punish the Defendant for egregiously wrongful acts and to deter the Defendant and others from committing similar wrongful acts.

59. Plaintiffs have been injured by the willful and wanton actions of the Defendant that include in part the participation and/or condoning of the actions of the Defendant's agents that were done to improve the value of the Defendant's Property by harming the Plaintiffs' Property.


## DEMAND FOR JURY TRIAL

Plaintiffs respectfully demand a trial by jury on all of the claims asserted in this action.

WHEREFORE, Plaintiffs respectfully requests the Court for the following relief:

1. That the Court find the Defendant liable to the Plaintiffs for a total of at least $75,413.47 with damages from Trespass to Timber in the amount of $4,913.37 at least and Trespass of Land in the amount of $70,500.00 at least.

2. That the Court enter judgment against Defendants plus interest at the legal rate until paid in full after the judgment, the costs of this action, and attorney fees.

3. That the Plaintiffs recover the costs and expenses incurred in this action, including reasonable attorneys' fees.

4. That the Plaintiffs recover punitive damages.

5. That the court accepts this verified complaint as an affidavit of the Plaintiff from which to base any motions related to this case.

6. That the Plaintiff recovers any further relief that the Court deems just and proper.

This the 21st day of May, 2024.

KING LAW OFFICES, PC

/s/ James Patrick A. Twisdale
James Patrick A. Twisdale
NC Bar Number: 56413
1012 Old Spartanburg Rd.
Hendersonville, NC 28792
828.286.3332
ptwisdale@kinglawoffices.com

Austin von Henner
NC Bar Number: 60359
22 S. Pack Square
Asheville, NC 28801
828.286.3332
avonhenner@kinglawoffices.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CASE NO. 1:24-cv- 151

JACK V. SMITH and KERSTIN A.
LANIER,
     Plaintiffs,

   v.

**VERIFICATION**

JOHN LEITE & LISA CLARK TRUST,
     Defendant.

STATE OF NORTH CAROLINA
COUNTY OF

JACK V. SMITH being first duly sworn, deposes and says that he is one of the Plaintiffs in the above-captioned matter; that he has read the foregoing complaint and knows the contents thereof and that the same are true to his own knowledge except as to those matters stated on information and belief, and as to those matters he believes them to be true.

                                                     JACK V. SMITH
                                                     *Plaintiff*

SWORN TO AND SUBSCRIBED BEFORE ME

On May _8th_, 2024.

_____
      Notary Public

My Commission Expires: _8-5-26_

SAMANTHA E LANIER
NOTARY
PUBLIC
BUNCOMBE COUNTY, NC